James D. Hopkins, J.
The plaintiff has sued the Village of Elmsford, and the members of the Board of Trustees of the Village (hereinafter called “ the Village ”) for an injunction restraining the Village from maintaining a barricade presently existing at the junction of South Hillside Avenue and Greenwood Lane, and for money damages arising from the maintenance of the barricade. At the trial, the plaintiff abandoned its claim for money damages.
The issues throw into bold relief the conflict between the rights of a landowner and member of the traveling public and the powers granted to a municipality to exercise control over highways. Perhaps in a more accurate and profound sense, the issues involve a conflict in policy in the field of planning and subdivision regulation between two adjoining municipalities, one of which is not a party to this action.
The plaintiff is a corporation owning land in the Town of Greenburgh, in which the Village is wholly located. The northerly boundary of the land lies on the territorial division line between the town and the Village. The plaintiff took title to the land in September, 1959; for some time prior to the convey *936 anee, the plaintiff’s representatives had been engaged in proceedings before the planning board of the town for approval of a subdivision development plat (Town Law, § 276). One or more preliminary plans were submitted to the planning board, and several meetings were held by the planning board concerning aspects of the plans. One of the major problems regarded by the planning board was the distribution of roads within the development and their connection with existing highways. Several methods of access were considered.[1]
The planning board finally determined that an extension of South Hillside Avenue, an existing highway maintained by the Village, was the most acceptable route, and it conditioned its approval of the subdivision plat upon that extension, called by the plaintiff on the plat finally approved as Greenwood Lane. To this condition the plaintiff acceded, and on August 6, 1959, the subdivision plat was approved.[2]
South Hillside Avenue appears on a subdivision plat approved by the planning board of the Village approved on May 29, 1959 (Village Law, § 179-k). It is a village street, having two lanes of pavement, and curbs on either side, with houses fronting thereon, and their driveways emerging directly on the pavement. The Mayor of the Village testified that the street had not been designed or built for through traffic.
As shown on the plat approved by the Village planning board, South Hillside Avenue is immediately adjacent to the southerly boundary of the Village and to Merritt Avenue, a paper street shown on another subdivision map of land in the town, and running east and west along the Village boundary line.[3] *937 After a public hearing held on September 10, 1959, the town board adopted a resolution on November 5, 1959, abandoning Merritt Avenue in the vicinity of plaintiff’s development, except for a portion 60 feet in width reserved for the continuation of Greenwood Lane to South Hillside Avenue.[4]
There is a question as to the knowledge of the Village concerning the actions of the town relative to plaintiff’s development. There is no evidence of any notice of public hearing before the town planning board with respect to the approval of plaintiff’s plat served either personally or in writing on a village officer.[5] There is evidence, however, that the town planning board invited the chairman of the Village planning board to a meeting held on February 20, 1959, nearly six months before the final approval of plaintiff’s development, at which time plaintiff’s preliminary plans were discussed. The chairman testified that he listened to the discussion but took no part in it, and heard no proposal for the extension of South Hillside Avenue; the secretary of the town planning board testified that there was discussion concerning the extension of the street into plaintiff’s subdivision, but that the chairman of the Village board was not asked any opinion concerning it, nor expressed any. Beyond this inconclusive testimony, there is no evidence of any knowledge of the Village officials with respect to the approval of plaintiff’s subdivision. At the public hearing held before the town board for the abandonment of Merritt Avenue, the record discloses that the Mayor of the Village and the Village engineer appeared and objected to the abandonment, unless proper drainage was provided. On the date of this public hearing, the town planning board had already approved plaintiff’s subdivision.
The plaintiff began construction of Greenwood Lane after the approval of its plat; it is now paved, but not a public street. The Village erected a barricade on October 9, 1959, which prevents vehicular traffic from entering or leaving the Village via Greenwood Lane; pedestrians still continue to use South Hill *938 side Avenue from Greenwood Lane. The Village justifies the erection of the barricade on the grounds that (1) debris in the construction of Greenwood Lane made travel from South Hillside Avenue into the latter street unsafe; (2) South Hillside Avenue was not designed for through traffic, and would be unsafe for pedestrians and other traffic if it became part of a system for through traffic from the developed area of the town to the south; (3) the town changed its policy with respect to the planning of highways, in that area, without notice to the Village.
The plaintiff, on the other hand, contends that the Village is without power to prohibit travel on Greenwood Lane, and that it, as a developer of homes, has sustained damage by the erection of the barricade, warranting the issuance of an injunction against the Village, directing the removal of the barricade. Moreover, the plaintiff produced testimony from home owners in its subdivision that South Hillside Avenue provides a direct and short route to the schools serving their area, and that Canterbury Road, joining Greenwood Lane at its southerly end, and the other highways leading from Canterbury Road to the Village and the schools are steep, narrow, and in times of snow difficult traverse.[6]
We may pause before examining the law applicable to this state of facts to reflect that the predicament in which the plaintiff finds itself would never have arisen if the town and Village had consulted with reference to the proper planning and development of highways to serve plaintiff’s subdivision. Certainly there is no more important phase of municipal planning than insuring the consistency of uses in the territory lying on either side of the boundary between municipalities, and it calls for the exercise of forbearance, wisdom and consideration of the aims and policies of each municipality by their joint effort, or at least, after each municipality has had the opportunity to deliberate on plans for the development of the area, and to express its view before final action is taken. In this case, we cannot come to any conclusion except that no such process was *939 adopted here, and, as a result, the present unfortunate situation has been precipitated.[7]
It is to this posture of the facts that the law must be applied. The Supreme Court of the United States has said that the right of the owner of land abutting a public street has been a prolific source of litigation, the upshot of which have been conflicting decisions not only among the States, but also in the same State (Sauer v. City of New York, 206 U. S. 536, 548, affg. 180 N. Y. 27). At common law, the State, and the municipalities, by delegation from the State, hold the fee of streets for the benefit of the public (People v. Kerr, 27 N. Y. 188; City of New York v. Rice, 198 N. Y. 124). An obstruction in a public highway preventing the right of passage amounts to a public nuisance (Wakeman v. Wilbur, 147 N. Y. 657).
Nevertheless, the “ [PJublic right to the unobstructed use of a street in all its parts is not absolute but relative ” (Lyman v. Village of Potsdam, 228 N. Y. 398, 404). And so, the right of a municipality, under power granted by the State, has been upheld to regulate the use of streets by reasonable provisions for the routing of truck traffic (Associated Transp. v. City of Syracuse, 274 App. Div. 565), for the location of bus stops (Cities Serv. Oil Co. v. City of New York, 5 N Y 2d 110, cert, denied 360 U. S. 934), or hack stands (Waldorf-Astoria Hotel Co. v. City of New York, 212 N. Y. 97), or the control of traffic (Ann. 73 A. L. R. 2d 689, 691).
The State has delegated to a village broad powers of regulation. Subdivision 44 of section 89 of the Village Law permits a village to regulate the use of its streets; section 141 thereof places the streets under the exclusive control and supervision of the board of trustees. Section 1640 of the Vehicle and Traffic *940 Law authorizes a village by ordinance, order or regulation to regulate traffic in certain prescribed particulars, and, moreover, to “ [A]dopt such additional reasonable local laws, ordinances, orders, rules and regulations with respect to traffic as local conditions may require subject to the limitations contained in the various laws of this state.”[8] Not only must the control exercised by the Village be reasonable, as the statute directs, but also the statute forbids the enforcement of any control excluding an owner or operator of a vehicle from the free use of a public highway (Vehicle and Traffic Law, § 1604, formerly Vehicle and Traffic Law, § 54; see n. 8 for effect). Pursuant to the limitations of powers contained in the delegation from the State, the courts have invalidated ordinances designed to prohibit through or transient traffics on municipal streets (People v. Grant, 306 N. Y. 258; Wiggins v. Town of Somers, 4 N Y 2d 215, 218), or ordinances which are not reasonable in regulating traffic as it may affect a neighboring municipality (Associated Transp. v. City of Syracuse, 196 Misc. 1031, the later disposition of the issues considered in Associated Transp. v. City of Syracuse, 274 App. Div. 565 supra).
The plaintiff asserts rights of an abutting landowner on South Hillside Avenue which are cut off by the barricade, as well as its public rights. It was the early rule at common law that the abutting landowner had no enforcible rights in a public highway, unless he could show a special damage. The rule was often phrased that the abutter must establish a damage different in kind and not merely in degree from the damage sustained by the public (Smith v. City of Boston, 7 Cush. [61 Mass.] 254) — a rule criticised by at least one authority for its rigidity in its application against the abutter (Smith, “Private Action for Obstruction to Public Bight of Passage,” 15 Col. L. Rev. 1, 142, 151). The rule was not, seemingly, applied with full severity against the abutting landowner in New York (e.g., Wakeman v. Wilbur, 147 N. Y. 657 supra; see, also, Highway Law, § 319), and a modification of the rule was recognized in the elevated highway cases in his favor (Story v. New York El. R. R. Co., *941 90 N. Y. 122; Egerer v. New York Cent. & Hudson Riv. R. R. Co., 130 N. Y. 108).[9]
The rule is well settled, however, that an abutting land owner has a property right of access to a public highway, which cannot be removed without compensation, unless a suitable alternative means remains or is provided (Matter of Smith v. Gagliardi, 286 App. Div. 873; Holmes v. State of New York, 282 App. Div. 278; 279 App. Div. 489; Jacobsen v. Incorporated Vil. of Russell Gardens, 201 N. Y. S. 2d 183; cf. Meloon Bronze Foundry v. State of New York, 10 A D 2d 905). Thus, it has been said that there is no damage to an abutter if one end of a public street is closed, but the other end is left open (Coster v. Mayor, etc., of Albany, 43 N. Y. 399; Fearing v. Irwin, 55 N. Y. 486), subject to the qualification that the open end furnishes a suitable means of access (Matter of Smith v. Gagliardi, 2 Misc 2d 1005, affd. 2 A D 2d 698).[10]
Nevertheless, the rights of the abutter are not paramount to reasonable municipal regulation. ‘£ Aside from the elevated railway cases, it is generally held that any change in the street for the benefit of public travel is a matter of public right as against the private right of the adjacent owner” (Perlmutter v. Greene, 259 N. Y. 327, 333). In one case, because of traffic regulations, an abutter was compelled to travel five miles out of his way before turning to travel in the direction he desired to go, and the regulations were held valid (Jones Beach Blvd. Estate v. Moses, 268 N. Y. 362).
We reach the conclusion, therefore, that plaintiff’s rights as a member of the public and as an abutter are much the same, that the plaintiff’s rights are subject to reasonable municipal regulations, but that as an abutter, where means of access are denied it, suitable alternative means of access must be available.
Here, the plaintiff claims to an abutter to South Hillside Avenue, because it owns the bed of Greenwood Lane. [11] Ordinarily, one owning land at the end of a cul-de-sac[12] is held to *942 be an abutting land owner (Hofstra Coll. v. Board of Trustees 145 N. Y. S. 2d 323, affd. 3 A D 2d 712; 10 McQuillin, Municipal Corporations [3rd ed.], § 30.55, p. 657; Ann. 73 A. L. R. 2d 652, 657). Greenwood Lane is not, however, a public street.[13] Nor is it a street shown on the same subdivision map as South Hillside Avenue. The plaintiff has consequently no rights as a property owner in South Hillside Avenue (Sauchelli v. Fata, 306 N. Y. 123, Goldrich v. Franklin Gardens Corp., 282 App. Div. 698).[14] Nor may it be said that plaintiff does not have access to Canterbury Road and other streets leading to the Village. The means of access may not be as convenient, but that is not the test. The test is whether the remaining access is reasonably suitable.
Plaintiff and purchasers of lots in its subdivision complain of the remaining means of access because it is circuitous, narrow, steep, and difficult to travel in Winter. The evidence shows that others in the vicinity travel the same route and have done so for some time. The streets from the evidence appear to be of approximately the same width and construction as South Hillside Avenue. Distance alone is an insufficient factor to demonstrate an unsuitable access, particularly where Greenwood Lane is itself a private road, newly constructed.
Plaintiff’s rights as a member of the public must now be considered. There is no public right of uninterrupted travel on Greenwood Lane from South Hillside Avenue, since Greenwood Lane is not a public street. The question is whether the Village might prevent travel from a private street upon a village street.[15] We think that where public safety is involved, a village may prevent travel from a private street upon a village street (Matter of Smith v. Gagliardi, 2 Misc 2d 1005, affd. 2 A D 2d 698, supra; Segal v. Village of Scarsdale, 17 Misc 2d 27; cf. Good *943 Deal of Ivy Hill v. City of Newark, 32 N. J. 263).[16] Here the evidence is that the Village acted to prevent vehicular traffic because of interests of public safety; pedestrian traffic is permitted. The Village is not powerless to protect its residents from the hazard created by a private road, which has come into being without its consent or approval, though under the direction of a neighboring town.
If, in the future, Greenwood Lane becomes a public street, then the Village cannot prohibit vehicular traffic, since that power, as we have seen, has been denied to a municipality by the State (Vehicle and Traffic Law, § 1604; People v. Grant, 306 N. Y. 258 supra). The Village might, under those circumstances, adopt reasonable traffic regulations.[17] However, that question is not before us at this time.
Judgment is directed in favor of the defendants, dismissing the complaint without costs.

. Robert C. Dunn, planning consultant and secretary of the planning board, testified that the planning board discussed access from (a) Merritt Avenue, a paper street appearing on older subdivision maps — this was rejected because of excessive grades; (b) Sprain Brook Parkway Drive, also a paper street appearing on older subdivision maps, but partially improved at one terminus — this was rejected because of excessive grade and hazard of intersection with an existing highway; (e) Canterbury Road, an existing highway — this was rejected because of excessive grade and curves. At the trial, the "Village sought to prove that Sprain Brook Parkway Drive was an access, which, if properly improved, would solve the plaintiff's difficulties. This point has not been considered, since plaintiff is proceeding on a claim of right under existing circumstances.

. One of the conditions contained in the resolution approving the subdivision was that all streets on the plat should be suitably graded and paved in accordance with town standards.

. On the plat approved by the Village planning board, no turnaround is indicated for the southerly terminus of South Hillside Avenue, apparently because of its intersection with Merritt Avenue.

. This action of the town board thus establishes that at the time of the approval of plaintiff's subdivision and of the adjoining subdivision by the Village board, Merritt Avenue was a town highway, though not improved.

. The record indicates that a notice of a public hearing before the planning board was published once in a newspaper published in the village. That notice is ambiguous, however, for it states that the hearing shall be held upon plaintiff’s application “ for a reasonable change in the zoning regulations of the Town of Greenburgh in connection with a request for approval of a subdivision plat.” It then describes the changes as applying to the width and area of lots.

. Canterbury Road is a public highway, as are the other highways leading to the Village. There was testimony that the distance from the barricade to the elementary school in the district (located in the Village) was three tenths of a mile, traveling along South Hillside Avenue; the distance from the barricade, traveling along Canterbury Road and the other highways leading to the Village, was two and a half miles to the school.

. Although legislation is in force that directs that notice of hearing of any zoning change affecting land within 500 feet of an adjoining municipality be given to the adjoining municipality (L. 1956, eh. 83, amdg. Village Law, § 178 and Town Law, § 264; cf. General Municipal Law, § 239Lm), it does not apply to an approval of a subdivision plat, nor does it afford a right of judicial review, in the event that the municipality having jurisdiction takes action contrary to the objection of the adjoining municipality. Legislation enacted recently, affecting municipalities in Westchester County, will prevent a recurrence of the instant problem; it provides that notice of hearing in connection with a subdivision plat shall be given to an abutting municipality within 500 feet of such land, and confers the right of judicial review in the event of a resolution contrary to the expression of the abutting municipality (L. 1961, ch. 823, adding section 452 to the Westchester County Administrative Code).

. Former section 1640 of the Vehicle and Traffic Law (L. 1957, ch. 698, eff. July 1, 1958) was in force at the time the barricade was erected. It reads, for all practical purposes, the same as present section 1640 of the Vehicle and Traffic Law (L. 1959, ch. 775, eff. Oct. 1, 1960). Traffic controls in effect on October 1, 1960 were allowed to continue, provided that they did not conflict with the terms of the chapter, which was a complete revision of the Vehicle and Traffic Law (see Vehicle and Traffic Law, § 2002, subds. [a], [c]).

. The theory of recovery on behalf of the abutter was that a private use of the highway transgressed his rights. But a similar use for public purposes (highway viaduct) was said not to invade an abutter’s rights (Sauer v. City of New York, 180 N. Y. 27; 206 U. S. 536).

. See, also, n. 12 Syracuse L. Rev. 88.

. It is conceded that in plaintiff’s conveyances of lots in its subdivision, it reserved title to Greenwood Lane.

. A cul-de-sac is defined as a road “ having no egress at one extremity ” (People ex rel. Williams v. Kingman, 24 N. Y. 559, 570; see, also, 1 Elliott, Roads and Streets [4th ed.], § 2, pp. 3-4).

. The proof is that, although the plaintiff has offered a deed to Greenwood Lane expressly to the town, the town has not accepted the street.

. The eases of Reis v. City of New York (188 N. Y. 58) and Matter of Hoyt (162 App. Div. 469, affd. 213 N. Y. 651) hold that a grantee of a lot sold with reference to a filed map has a private easement on a road shown on the map, and has rights which must be recognized if the road is closed. This is, of course, not the factual situation here.

. The Village did not “ close ” South Hillside Avenue. It did not follow the procedure laid down by law for the vacation of a village street (Village Law, §§ 145-148), a procedure reviewable by the courts (People ex rel. Mershon v. Shaw, 34 App. Div. 61). Indeed, South Hillside Avenue remains in the same status as it had possessed prior to the construction of Greenwood Lane.

. The plaintiff cites eases in other States in support of its contentions (Pivnick v. City of Newark, 14 N. J. Super. 134; City of Gary v. Much, 180 Ind. 26; Messinger v. City of Cincinnati, 36 Ohio App. 337; Royal Tr. v. Village of West Milwaukee, 266 Wisc. 271; City of Druid Hills v. Broadway Baptist Church, 316 S. W. 2d 698 [Ky.]). In none of them, however, does the factual pattern of this ease appear.

. It is noted that the Village did not act by ordinance here, but by resolution (cf. Village Law, §§ 90, 92, 95; Village of Williston Park v. Israel, 191 Misc. 6, affd. 276 App. Div. 968). A resolution has been said to be an action dealing with matters of special or temporary character, relative to administrative business, whereas an ordinance is a permanent rule of conduct or government (5 McQuillin, Municipal Corporations [3d ed.], § 15.02, pp. 51-56; Kij v. Aszkler, 163 Misc. 63, 64).