228

In the Matter of the Application and Petition of GEORGE J. GILLESPIE and Another, Constituting the Board of Water Supply of the City of New York, to Acquire Real Estate for and on Behalf of the City of New York under Chapter 724 of the Laws of 1905 and the Acts Amendatory Thereof, in the Towns of Shandaken, Woodstock and Olive, Ulster County, New York, for the Purpose of Providing an Additional Supply of Pure and Wholesome Water for the Use of the City of New York. (Esopus Creek Section No. 1.)

THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant; GEORGE J. GILLESPIE and Another, Constituting the Board of Water Supply of the City of New York, Respondents.

Third Department, April 29, 1936.

*Harry H. Flemming,* for the appellant.

*Paul Windels, Corporation Counsel* [*George S. Parsons* and *John D. Van Wagoner* of counsel], for the respondents.

Hill, P. J. The New York Central Railroad Company, the present owner of the railroad properties formerly belonging to the Ulster and Delaware Railroad Company, appeals from an order which dismisses its answer to a petition filed by the board of water supply of the city of New York in a proceeding wherein the city seeks to obtain by condemnation " The right in perpetuity to interfere with or otherwise affect the natural and usual flow of the waters of the Esopus Creek in that portion of said Creek lying between the point in the Town of Shandaken, Ulster County, New York, where the outlet of the Schoharie Water Tunnel, maintained by the Department of Water Supply, Gas and Electricity of the City of New York, joins said Esopus Creek and the point southerly therefrom, where said Esopus Creek flows into the Ashokan Reservoir, in the Town of Olive, Ulster County, New York, to the extent that such natural and usual flow of the waters of said Creek is, or may hereafter be, interfered with or otherwise affected by the induction into said Creek, in the portion thereof above described, either continuously or from time to time, and in such quantities as the operating needs of such Department may require, of the water of said Schoharie Water Tunnel, not exceeding the maximum flow of water which may be carried or conducted through the said tunnel; such tunnel having a height of 11½ feet and a width of 10 feet, three inches, an elevation at its northerly end of 1,050 feet and at its southerly end of 970 feet, both above mean sea level of the Atlantic Ocean; a slope southerly of 4.4 feet per mile, and a maximum capacity of about 687,000,000 gallons daily, flowing at a maximum rate of about 1,063 cubic feet per second."

The proceeding was commenced and is being conducted " pursuant to Chapter 724 of the Laws of 1905, as amended." The amendments are, among others, chapter 314 of the Laws of 1906 and chapter 525 of the Laws of 1928. It is stated in the petition that the right of flowage sought will be " along, over or through " fourteen parcels of land belonging to the appellant in the towns of Shandaken and Olive, Ulster county, as shown on a map filed in the county clerk's office of that county on October 5, 1935. The act permits the city of New York to acquire by condemnation lands or interest therein for the construction of what is generally known as the Ashokan water project, and thereunder the city has impounded in the Ashokan reservoir the waters from the watershed drained by the Esopus creek; and has built the Gilboa reservoir which impounds the waters of a part of the watershed drained by the Schoharie creek. The Gilboa reservoir empties into the Esopus creek at Allaben, ten miles west of the Ashokan reservoir, through a tunnel eighteen miles long. The natural flow of the Esopus

creek is thereby increased. The city has been a trespasser upon the lands of the riparian owners in so far as the daily 687,000,000 gallons of water has increased the depth and width of the Esopus creek. It now seeks to acquire the lands or interest therein upon which it has passed since the opening of the Shandaken tunnel.

Appellant's answer asserts failure to comply with all the requirements of the act under which the State has granted the right of eminent domain to the city. It has been said concerning the act under consideration: " The right of eminent domain is an attribute of sovereignty which the State may grant or withhold at its will. When it delegates that right, it may impose upon the donee any condition that does not encroach upon or abridge any of the constitutional rights of those whose property is to be taken. It may require the donee of the right to do more than is demanded by the Constitution, but it may not permit less to be done. If the donee accepts the right and exercises it, the conditions subject to which it is granted cannot be evaded or ignored. They are part and parcel of the grant. The whole argument upon this question is aptly and tersely stated in the language of Chief Judge CULLEN in *Matter of City of New York* (190 N. Y. 350, 354), where he wrote, ' that as the right to exercise the power of eminent domain must proceed from legislative authority, the Legislature may require more liberal compensation than that which would satisfy the constitutional requirement, but it cannot direct that anything less than just compensation shall be made.' " (*People ex rel. Burhans* v. *City of N. Y.*, 198 N. Y. 439, 446.)

Upon a motion to dismiss an answer, perusal of the complaint or petition is invited. There is failure to plead compliance with the following quoted portion of section 13 of the act: " Where loss, damage or expense, direct or consequential, has resulted to any duly incorporated railroad corporation, operating a steam railroad in any county in which land shall be acquired in pursuance of the provisions of this act, * * * the board of estimate and apportionment of the city of New York, is hereby authorized and empowered to agree with such railroad corporation * * * upon the compensation which shall be made to it for such loss * * *. In the event of no agreement being reached between said board and such railroad corporation, * * * the commissioners of appraisal * * * [are] hereby authorized and directed to pass upon such claim and to make awards therefor as provided in this act."

In *Matter of Lockport & Buffalo Railroad Co.* (77 N. Y. 557) the provisions of a statute concerning the intersection of two railroads were considered. The statutory requirement was, " If the

two corporations cannot agree upon the amount of compensation * * * the same shall be ascertained and determined by commissioners." The answer of one of the companies alleged that no attempt had been made to reach an agreement. The opinion states (p. 563): "When this answer was put in, the petitioner should either have withdrawn its petition, and then made efforts to agree with the appellant, or it should have been prepared to prove that such efforts had been made." The petition was dismissed. To the same effect, *Matter of New York Central Railroad Co.* (66 N. Y. 407); *Matter of Marsh* (71 id. 315, 318); *City of Long Beach* v. *Long Beach Water Co.* (209 App. Div. 902); *Matter of Bronx Parkway Commission* (176 id. 717, 720).

Section 7 of the act, in part, provides: "Such petition shall contain (1) a general description of all the real estate to, in, or over which any title, interest, right or easement is sought to be acquired for the said city for the purposes of this act, each parcel being more particularly described by a reference to the number of said parcel as given on said maps, (2) and the title, interest or easement sought to be acquired to, in, or over such parcel, whether a fee or otherwise, shall be stated in the petition."

This petition complies with that part of the section I have designated (1) by listing all of the appellant's property which borders upon the Esopus creek on the stretch involved, but fails to describe adequately the interest or easement which the city seeks to acquire, as required by that part of the above section which I have designated (2). The appellant has the right in advance of the hearings on damages to know the exact location of the land which will be taken, otherwise proof of damages will be difficult, if not impossible. Section 13 of the act requires that the report made by the commissioners at the termination of the hearing on damages "shall contain a brief description of the several parcels of real estate so acquired, taken or affected with a reference to the map or maps as showing the exact location and boundaries of each parcel." The city may not take a general roving right to flood appellant's lands. The right sought by the city to increase the depth and width of the Esopus creek and thereby to overflow appellant's land is real estate and a permanent easement.

"The case of *Benedict* v. *State of New York* (120 N. Y. 228), to which our attention has been called, holds that where a dam for canal purposes was intended to be a permanent structure for the purpose of increasing the depth of water in the river the resulting overflow upon the plaintiff's land is the taking of a permanent easement by the State for the use of the canal." (*Matter of Van Etten* v. *City of New York*, 226 N. Y. 483, 487.)

Section 25 of the act deals specially with the taking of lands belonging to a railroad corporation. It first fixes the meaning of the words " real estate," whêre used in the act, as signifying and embracing " All uplands, lands under water, the waters of any lake, pond or stream, all water rights or privileges, and any and all easements and incorporated hereditaments and every estate, interest and right, legal and equitable, in land or water  *   *   *. It shall also be construed to include all real estate (as the term is above defined) heretofore or hereafter required or used for railroad, highway or other public purposes, providing the persons or corporations owning said real estate or claiming interest therein, shall be allowed the perpetual use for such purposes of the same or of such other real estate to be acquired for the purposes of this act as will afford practicable route or location for such railroad  *   *   *, commensurate with and adapted to its needs; and provided also that such persons or corporations shall not directly or indirectly be subject to expense, loss or damage by reason of changing such route or location, but that such expense, loss or damage shall be borne by the city of New York."

It then provides that if any of the real estate of a railroad company is to be taken or affected, it shall be designated upon the maps and described in the petition and that a proposed substituted route shall be described and that hearings be had before the Supreme Court to determine whether the proposed substituted route is reasonable and proper; also that the award by the commissioners shall include an amount sufficient to defray the expenses " of making such change of route and location and of building such railroad." The petition contains no allegations in compliance with this requirement, and its vagueness in respect of the boundaries of the land to be flowed makes it uncertain whether a relocation of any part of the line of the railroad will be necessary.

The order should be reversed on the law and facts, with fifty dollars costs and disbursements, and the motion to dismiss appellant's answer should be denied, with ten dollars costs.

RHODES, McNAMEE, BLISS and HEFFERNAN, JJ., concur.

Order reversed on the law and facts, with fifty dollars costs and disbursements.

Motion to dismiss appellant's answer denied, with ten dollars costs.