In the Matter of the Application of COUNTY OF DELAWARE, Petitioner, against FLORENCE WAKEMAN, RALPH T. BALLARD, MATHILDA H. BALLARD and GEORGE J. DANN, Defendants, for the Condemnation of Lands for Highway Purposes for the Construction of the Walton-Downsville, Part 2, State Highway, County of Delaware.

County Court, Delaware County, August 9, 1938.

*Samuel H. Fancher, County Attorney,* for the petitioner.

*Arthur F. Curtis,* for the defendants Ralph T. Ballard and Mathilda H. Ballard.

O'CONNOR, J. This is a proceeding to condemn for the construction of the Walton-Downsville, Delaware County, Part 2, State highway, lands occupied by Ralph T. Ballard and Mathilda H. Ballard, his wife, under a contract of purchase from Florence Wakeman. The proposed road runs through the farm of Mr. Ballard, about two and thirteen one-hundredths acres being taken from his farm on the northerly or lower side of the highway, and about five and thirteen one-hundredths acres on the southerly or upper side of the highway.

About 120 acres of owner's farm lies on the upper or southerly side of the highway and is entirely woodland, on which are beech, birch, maple, bass and some pine trees.

Prior to the construction of State highway No. 2 there was a road called the " Notch Road " which formerly had been a public highway but was abandoned and used by the owner as means of access to this 120 acres of woodland. This " Notch Road " crossed the old dirt road where the improvement is being made and was the owner's only means of access to the woodland. The grade on either side of the new highway is quite steep. Unless defendant can construct a road on each side of land leading to the present highway, he would have practically no access to this 120 acres of woodland. Unless he was able to obtain a right of way across an adjoining property he would have to travel a distance of twenty or thirty miles over a public highway to get to this wood lot. The parties are agreed that a road can be constructed along the bank on each side of the new State highway, but they differ greatly as to the manner and cost of its construction.

The owner objects to the confirmation of the award because he claims that he has no right to construct a road upon the lands which the county is condemning for State highway as the county takes a fee of the lands condemned; also that there is a stone quarry on the southerly or upper side of the new State highway, a portion of which is within the bounds of the lands sought to be condemned by the county, which the commissioners have not taken into consideration in making the award.

There is a sharp dispute in the evidence as to the value of the lands taken. Owner's witnesses testified the damage to the defendant's premises by reason of taking the lands sought to be condemned is from $3,500 to $4,000, while the witnesses in behalf of petitioner place the damages at $388.20.

The commissioners appointed by the court were men of experience and sound judgment, had an opportunity to observe the appearances of the witnesses in behalf of both parties and their manner of testifying and are better able than the court to judge of the credence and weight that should be given to the testimony of each witness. We have the usual conflict which is present in all of these cases; the witnesses sworn by the respective parties differ widely in the value they placed on the property taken. The commissioners, after hearing all of the evidence and viewing the premises, have fixed the amount of damages sustained by the defendant at the sum of $482. Their decision is not so plainly against the weight of evidence as to warrant the court in setting it aside. " An award will not be set aside as excessive or inadequate unless it is obviously and clearly wrong, or unless it is such as to shock the sense of justice of the court." (*Matter of City of Rochester,* 234 App. Div. 583; *Adirondack Power & Light Corp.* v. *Evans,* 226 id. 490, 493; *Cornish* v. *Village of South Nyack,* 136 N. Y. Supp. 390.)

However, there are two questions which have been raised by the owner which are worthy of consideration: *First,* has the defendant the right, without permission from the State, to construct a private road within the bounds of the State highway? *Second,* is the defendant entitled to compensation for a stone quarry, a part of which is within the bounds of the lands of the defendant sought to be condemned by the county?

In condemnation proceedings where lands are taken by the county for the purpose of constructing a State highway the county takes a fee to the property and not merely an easement. (*Thompson* v. *Orange & Rockland Electric Co.,* 254 N. Y. 366.) Upon the filing of the oath of office by the commissioners in the county clerk's office the title to the lands described in the petition vests in the county forever. (Highway Law, § 34.) It is undoubtedly true that an adjoining owner has an inherent right of access from his own lands to a State highway. (*Donahue* v. *Keystone Gas Co.,* 181 N. Y. 313; *Griefer* v. *County of Sullivan,* 246 App. Div. 385.) However, section 52 of the Highway Law provides in substance that no person shall enter upon or construct any works in or upon any State highway, except under such conditions and regulations as may be prescribed by the Superintendent of Public Works, and that any person violating said section shall be liable to a fine and may also be removed from the State highway as a trespasser by the Superintendent of Public Works upon petition to the County Court of the county or Supreme Court of the State. This section does not forbid the construction of a private road across a State highway (*People* v. *Delaware & Hudson Co.,* 183 App. Div. 149),

but unless such private road shall be constructed under such conditions and regulations as may be prescribed by the Superintendent of Public Works the person constructing said private road is subject to a fine and removal of the private road by the Superintendent of Public Works upon petition to the County or Supreme Court.

The petitioner's witnesses testified that it would cost seventy-five dollars to construct a road on both sides of the new highway which would give the owner access to his 120 acres of woodland. The owner's witnesses estimated the cost of construction of such a road from $400 to $1,200. A part of this difference is accounted for by the width and kind of road to be built. The commissioners have awarded him $200 for that purpose. It is quite evident from the testimony that the so-called Notch road, by which the owner had access to his wood lot, was not a very good highway but very steep and such a road as is ordinarily maintained and used for access by a farmer to his wood lot. The owner is entitled to have access to his wood lot and this by a road as suitable and convenient as that he formerly used. The cost of giving him such means of access should be taken into consideration in fixing the damages to which he is entitled. If it is impossible for such a road to be constructed he is entitled to receive compensation for any inconvenience caused him thereby.

There is no evidence in this proceeding as to whether or not either of the roads proposed by the county or the defendant would be approved by the Superintendent of Public Works or as to what conditions or regulations he might prescribe. In order that the commissioners may properly determine the cost of construction of a road which would afford the owner practically the same means of access to his woodland as the road which he formerly used, and the amount of damages to which defendant is entitled, it is necessary that the commissioners be informed as to what conditions and regulations would be imposed upon the owner by the Superintendent of Public Works in the construction of such a road.

It is perfectly apparent that the commissioners did not take into consideration in determining the amount of damages to which the defendant is entitled the value of the stone quarry, a portion of which is within the bounds of the lands sought to be condemned. The award of the commissioners as itemized in their report is 108 rods of fencing, $108; construction two roads, $200; 2.13 acres, $74.55, and 5.13 acres, $102.60; total, $485.15. The stone quarry, according to the evidence, has some value as it has been operating for many years and was operated at a profit during the last year. One of the witnesses for petitioner testified that the value of the part of this quarry taken was $350 to $400.

The attorney for the petitioner at the hearing before the commissioners conceded and stipulated that the taking of the lands by the county for this highway should not interfere with the right of the owner to work, operate and remove stone from the stone quarry. The owner objected to the commissioners receiving and considering such concession, and in our opinion the objection was well taken. The petition and maps of the petitioner specified the amount and extent of the land to be taken from the defendant for the purpose of this highway. These constitute the record as what and how much land is to be taken and cannot be modified by concession or stipulation of counsel. The county takes the land in fee. If the defendant is to be allowed to retain or reserve the right to operate his stone quarry, the petitioner should amend its petition accordingly or take some action which will adequately protect the rights and interest of the owner in and to the stone quarry. There should be no question as to the extent of, or title to, the lands taken by the petitioner from the owner nor of the nature and extent of any right or easement which the petitioner permits the owner to reserve or retain to the lands so taken. (*Matter of Gillespie*, 247 App. Div. 228.) An award will be set aside where the commissioners failed to take into consideration an element of damage for which the owner is entitled to be compensated. (*County of Erie* v. *Fridenberg*, 221 N. Y. 389.)

For the foregoing reasons the proceedings are sent back to the commissioners for a further hearing, consideration and report.