Richard S. Heller, J.
Claimants seek recovery for the appro - priation of property pursuant to section 30 of the Highway Law. The appropriation is described on Maps No. 1086, 1087 and 1092, Federal Interstate Route 505, Five Mile Point to Broad Avenue, Binghamton FAI 505-1-2, Broome County. Coinés of *785 .said, maps were annexed to the claim herein and the court adopts description of the appropriated property as set forth in said maps. It was stipulated on the trial that the property so described was appropriated on September 30, 1960. The claim was filed on March 6,1961.
The appropriation included the taking in fee of 1.58 acres and a permanent easement for drainage purposes over .048 acres.
Claimants were the owners of a large tract of land located in the northeast part of the City of Binghamton, 2.6 miles from the center of that city. The claimants utilized a large part of the land and the substantial and extensive improvements thereon as a school for the mentally retarded.
The claimant Waldemar H. Boldt is a licensed and practicing physician with postgraduate degrees in psychiatry. Claimant Wilholmine H. Boldt is a graduate registered nurse. Both claimants were active in and supervised every phase of the operation of this residential school for the mentally retarded which had been in operation under the supervision of Dr. Boldt’s family since 1881.
The property appropriated was at the corner of Fairview Avenue and Merrick Street and Fairview Avenue and Wilcox Street. On the east side of Fairview Avenue lying south of Merrick Street the claimants owned, on the south, a vacant lot landscaped and with a good many tines and substantial shrubbery. The next lot to the north was 104 Fairview Avenue and this was improved with a substantial residence which the claimants utilized as their home. This building and property had been purchased by the claimants about 1950. At the rear of this property was a playhouse utilized by residents of the school.
Immediately north of this property was 108 Fairview Avenue which is located on the southeast corner of Fairview Avenue and Merrick Street. This property was improved with a large building erected about 1926 which had been utilized as a residence by the mother and father of the claimant Waldemar Boldt, and which at the time of the appropriation was being used in part as the residence of Dr. Boldt’s mother. About 1954 the basement had been finished as a recreation room utilized by the residents of the school, and the building was equipped with a reception room for parents, storage facilities, and was generally used as the administration center of the school. There was a hlacktopped parking area and a substantial garage.
Immediately east of 104 and 108 Fairview Avenue, were two vacant lots known as No. 2 and No. 4 Merrick Street which were landscaped and shrubbed, with an outdoor fireplace and incinerator located on 4 Merrick Street.
*786 All of this property with the exception of.a very small triangle of land at the southwest corner of 102 Fairview Avenue was appropriated by the State.
The claimants also owned a substantial parcel of vacant land on the west side of Fairview Avenue at the northwest corner of Fairview Avenue and Wilcox Street. This land was unimproved except for three sewer laterals available on the lot known as 105 Fairview Avenue. The property was at grade with Wilcox Street but was substantially below grade along Fairview Avenue as Fairview Avenue sloped upward to the north. All of the property was appropriated with the exception of a very small triangle on the south.
Across the street from 105 Fairview Avenue and on the north side of Merrick Street was the main building of the school which contained sleeping quarters, school rooms, dining room, kitchen facilities, etc., and which housed about 35 mental retardates in residence. This large building was described as the original building in the school.
North of this building was a smaller building which was described as the medical building. About 1952 this building had been expanded with the installation of a new front. From that time the claimant Waldemar Boldt utilized this building for medical purposes in the treatment of private patients as well as for medical matters connected with the school.
East of the original building was another building known as Maple House and described as 1 Merrick Street. This building was utilized as a residence for mental retardates. It had originally, prior to the erection of 108 Fairview Avenue, been utilized as a residence by Dr. Boldt’s father and mother. The other substantial buildings constituting a part of this school were located at 7 Merrick Street and at 3 Highland Street. The building at 7 Merrick Street was a self-contained unit for resident mental retardates, equipped with its own kitchen, sleeping quarters, etc., and known as Baby House since it was equipped for the accommodation of infant mental retardates. The structure on 3 Highland Street was a substantial quonset type structure used for storage and maintenance purposes. The claimants owned two additional lots known as 9 and 11 Merrick Street to the east of Baby House and they owned the entire frontage on Highland Street extending easterly from Fairview Avenue to East Street and owned two lots at the southeast, corner of East Street and Highland- Street. They also owned a tract of land containing approximately 6.5 acres lying north of Highland Street and owned all of the property contiguous to Highland *787 Street and extending north beyond a creek with the exception-e-fa plot approximately 200 feet deep with a frontage on Highland-Street of about 240 feet lying on the north side of Highland Street opposite Nos. 12,' 14, 16 and 18 Highland Street. - -
Fairview Avenue was a macadam street with utilities available. East Street where it traversed claimants’ land, existed only on maps of the area and did not actually exist on the ground. Highland Street was simply a lane from Fairview Avenue to a point about opposite 14 Highland Street which served the property not owned by the claimants on the north side of Highland Street. Highland Street did not exist even as a lane east of that point. Merrick Street was a developed street as was Wilcox Street.
The entire area owned by the claimants was zoned for two-family residence use. The only existing structures other than those utilized by the claimants in the immediate area of claimants’ property, Avas one house on the above-mentioned plot on the north side of Highland Street and one or íavo houses east of claimants’ property on Merrick Street.
The expert real estate testimony presented by the State set the damage to the claimants at $58,400. The expert real estate testimony for the claimants set the damage at $205,838.
The major differences between the experts as to the extent of the damage arose from a difference of opinion as to whether or not the appropriation of property lying south of Merrick Street and west of Fairview Avenue imposed any consequential damage on the highest and best use of the property lying north of Merrick Street and east of FairvieAv Avenue. The position of the witnesses for the claimants and the claimants was that the highest and best use of the entire plot was for a school for the mentally retarded and that after the appropriations, the value of the remaining land and improvements of the claimants for this use had been destroyed since the property could no longer be used economically for that purpose.
The position of the State, on the other hand, was that all that was appropriated Avas property having a residential use and that the school for the retarded could be continued on claimants’ remaining property.
The court finds that the claimants were utilizing their property Avith the improvements thereon as a single entity in the conduct of a school for the mentally retarded and that this was the highest and best use of the property. The applicable measure of damage therefore, is the difference between the value of the whole unit before the taking and the value of the remaining *788 unit after the State’s acquisition, (Queensboro Farm Prods. v. State of New York, 6 Misc 2d 445, affd. 5 A D 2d 967, affd. 5 N Y 2d 977.)
The court is not satisfied, however, that- the evidence ostab lish.es that the properly remaining had no value for the conduct of a school for the mentally retarded after the taking. The school had successfully operated prior to 1926 without any improvements south of Merrick Street. It operated successfully from 1926 until about 3950 without the property and the improvement thereon at 304 Fairview Avenue. By lhe time of the appropriation there had been a fall off of the number of mental retardates in residence, but this fall off was apparently directly related to the cessation of an advertising program in 1958 following the appearance of publicity in the local newspapers as to the approximate route involved in this interstate highway.
The claimant himself pointed out that private schools for the mentally retarded exist in various sizes and various descriptions shaped by the philosophy of the people who operate them. While it may be true that the claimants’ remaining property with the elimination of the Fairview Avenue property south of Merrick Street and north of Wilcox Street and with- the proximity of the new interstate highway can no longer be operated in accordance with the particular philosophy and desires of these two claimants, this falls short of establishing that the remaining property is without any value as a school for the mentally retarded with consequent destruction of all value in the original building, major reduction in value of the other buildings and destruction of all value of the institutional type equipment remaining to these claimants. The fact that the remaining portion of the school may be so much less attractive and so much less efficient and the apparent hazard involved in the proximity of the interstate highway may be so great that these claimants would not personally care to operate the school in the future is not sufficient to establish the total destruction of value of the substantial and adequate facilities remaining to the claimants.
The court finds that the value of claimants’ property prior to the taking as a single entity, fully' and adequately equipped for the conduct of a residental school for the mentally retarded was $247,000 and that its value after the taking was $122,000 resulting in damage to the claimants by reason of the direct taking and the consequential damage to the entity which constituted the residential school for the mentally retarded owned and operated by the claimants in the amount of $125,000. The *789 claimants are entitled to judgment in the amount. of $125,000 less the sum of $31,800 heretofore paid to the claimants by the State of .New York, together with interest thereon from September 30, 1960 to the date of entry of judgment. ‘
The claim was duly filed and it has not been assigned. ■ The court has viewed the premises.
The award to claimants herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgagees and lienors having any right or interest in any stream, lake, watercourse, street, road, highway or right of way, or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of public service, electric, telephone, telegraph, pipe and railroad lines.