Henry W. Lengyel, J.
This is a claim for the appropriation of claimant’s land pursuant to section 30 of the Highway Law, which proceeding is described as Tuxedo-Harriman, Part I, S. H. No. 8258, Orange County, Map No. 55, Parcels Nos. 104, 105, and 115. The aforesaid map and description was filed in the office of the Secretary of State on the 20th day of March, 1959, in the office of the Clerk of the County of Orange on the 9th day of October, 1959; and personal service was made on the claimant on the 8th day of December, 1960. The original claim was filed with the Clerk of the Court of Claims and the Attorney-G-eneral on the 6th day of October, 1961, and an amended claim was filed with the Clerk of the Court of Claims *625 on the 19th day of March, 1964, pursuant to an order of this court dated the 9th day of March, 1964; and the same has not been assigned or submitted to any other court or tribunal for audit or determination. The court adopts the description of the appropriated property as shown on the map and description filed in the Orange County Clerk’s office, a copy of which is attached to the claim and same is incorporated herein by reference.
In order to place this claim in proper perspective we believe it necessary to set forth in detail the land holdings of not only the claimant herein but also of the contiguous owners. We shall initially set forth the deeds covering the east side of Route 17 as we proceed north:
(1) Deed from Hermine Thomas to Reuben and Ethel Freed, tenants by entirety, dated September 21, 1944, and recorded on said date in the Orange County Clerk’s office in Liber 941 of Deeds at page 40.
(2) Deed from Anton Thomas and Hermine Thomas to Red Apple Rest, Inc., claimant herein, dated June 26, 1942, and recorded on said date in the Orange County Clerk’s office in Liber 888 of Deeds at page 577. This property is immediately contiguous to the north of the land conveyed by deed No. 1 above.
(3) Deed from William Aver ell Harriman and Marie N. Harriman to Reuben Freed, dated July 31,1939, and recorded in the Orange County Clerk’s office on October 23, 1939, in Liber 824 of Deeds at page 592. This property is immediately contiguous to the north of the land conveyed by deed No. 2 above, except for a parcel with frontage on Route 17 which was previously conveyed by the Harrimans to the American Telephone and Telegraph Company. Reuben Freed conveyed this parcel to himself and his wife, Ethel, as tenants by the entirety, by deed dated November 1,1939, and recorded on November 2, 1939 in Liber 825 of Deeds at page 440.
(4) Deed from William Averell Harriman and Marie N. Harriman to Reuben and Ethel Freed, as tenants by the entirety, recorded in the Orange County Clerk’s office in Liber 851 of Deeds at page 578. This deed was not placed in evidence but is reflected on claimant’s exhibit 6 in evidence. This property is immediately north of and contiguous to parcel 3 above.
(5) Deed from Jasper Herbert to Red Apple Rest, Inc., dated July 15, 1949, and recorded on July 21, 1949, in the Orange County Clerk’s office in Liber 1129 of Deeds at page 113. This property is immediately north of and contiguous to parcel 4 above.
*626 The above five parcels comprise all of the property owned by Mr. and Mrs. Freed and by Bed Apple Best, Inc., on the east side of Bonte 17. On the west side of Boute 17 and again proceeding northerly we find the following conveyances:
(6) Deed from Hermine Schroder (formerly Hermine Thomas) to Bed Apple Best, Inc., dated June 23, 1949, and recorded on June 24, 1949, in the Orange County Clerk’s office in Liber 1126 of Deeds at page 281. This parcel is in part directly across Boute 17 from the Bed Apple Best property conveyed by deed No. 2 above.
(7) Deed from Bussell E. Cooley and wife to Beuben and Ethel Freed, as tenants by the entirety, dated November 1,1939, and recorded on November 8,1939, in the Orange County Clerk’s office in Liber 826 of Deeds at page 40. This parcel is contiguous to parcel No. 6 above on both the north and west boundary lines.
(8) Deed from Bussell E. Cooley and wife to Beuben and Ethel Freed, as tenants by the entirety, dated August 30, 1949, and recorded on September 1, 1949, in the Orange County Clerk’s office in Liber 1133 of Deeds at page 395. This parcel is contiguous to parcel No. 7 above on both the north and west boundary lines.
Bed Apple Best, Inc., was incorporated in the State of New York on April 8, 1931. At the date of appropriation and for some years prior thereto there were 200 shares of stock outstanding which were owned as follows:
Beuben Freed.......................... 146 shares
Herbert Freed ......................... 4 shares
Beuben Freed, as Trustee of an irrevocable trust for the benefit of Herbert Freed,
Marilyn Willinger, Evelyn Freed and
Elaine Freed......................... 50 shares
200 shares
Beuben Freed was president of the corporation and Herbert Freed was vice-president.
Before we explore the merits of the subject case we believe it necessary that we rule on two motions made by the State of New York during the course of the trial and upon which we reserved decision. Prior to the initiation of this appropriation claim, the claimant herein and Beuben and Ethel Freed joined in an action in equity praying for a judgment declaring that J. Burch McMorran, Superintendent of Public Works of the State of New York, had illegally interfered with plaintiffs’ right of access to and from Boute 17. The Court of Appeals in the *627 case of Red Apple Rest v. McMorran (12 N Y 2d 203, 206) stated: “We think, to the contrary, that under the Highway Law, and under the police power, and to effectuate a reasonably safe channelling of traffic, the State had a right to erect upon the property appropriated the guardrails in question.” This to us is the sole question decided by the Court of Appeals in said case. The Court of Appeals did go on to state that “ The guardrails, as erected, did not create a nonaccess highway or bar access to the premises in question but left ample room for ingress and egress.” This statement we consider as an observation made by said court not necessary or required in arriving at its decision but as obiter dictum which we will consider in our evaluation of monetary damages. We do not consider this obiter dictum as res judicata on the issues presented to us in the subject trial. We, therefore, deny the State’s motion on that point.
The State also maintained at the trial that claimant had not brought a claim for damage to the restaurant property east of Route 17; and, that if there was any damage such was caused by the guardrails on the east boundary of Route 17 which was a de facto appropriation and that claimant must sue separately for those damages. We reserved decision on the State’s objection and accepted testimony from claimant on alleged damages to the east restaurant property. After an examination of the claim and amended claim, it is our opinion that claimant is properly before this court with respect to any damages sustained by its property both east and west of Route 17. We overrule the State’s objection in this respect and deny the State’s motion to strike said testimony. The language of the court in Chalmers & Son v. State of New York (271 App. Div. 699, 701-702) is particularly appropriate to this situation:
“No narrow rule of construction should be applied to the wording of a claim. * * *
“ The statute should receive a reasonable construction and not one that unjustly deprives a suitor of the right to recover adequate compensation for the damages he has sustained. A substantial compliance with the statute is all that is required. Certainly the statute under consideration does not require absolute exactness of expression but simply a statement of the matter referred to with sufficient definiteness to enable the State officials to make an investigation in order to determine if the claim should be adjusted without suit.
“ Statutory provisions conditioning the right to maintain an action against the State should be liberally construed in favor of a claimant who is attempting to establish compliance with *628 their terms. The statute does not contemplate that the claim must be phrased with the technical precision and scientific nicety of a pleading. If the claim is technically imperfect or inaccurate in some respects but is yet sufficiently definite to inform the officers of the State of the time and cause of claimant’s injuries or damages, and the amount sought, it should be upheld.
‘ ‘ Here the State was neither deceived nor misled. Its rights have not been prejudiced. It had full knowledge of all the facts.”
Map 55 Parcel 104 appropriated a narrow strip of land from the Route 17 frontage of Deed No. 6 above, also shown as Parcel B in Exhibit 6. The appropriated area was 215± feet in length along the highway, 5.4± feet in depth at its north end and 8± feet in depth at its south end and contained 0.033± acre. The State erected a guardrail along this strip of land leaving 45± feet access at the north end of this parcel and 14± feet access at the south end.
Map 55 Parcel 105 appropriated a narrow strip of land from the Route 17 frontage of Deed No. 5 above, also shown on Exhibit 6 as Parcel C. The appropriated area was 324± feet in length along the highway, with a depth of zero feet at the northerly end to 5± feet at the south end and contained 0.034± acre.
Map 55 Parcel 115 appropriated a permanent easement contiguous to Parcel 105. This parcel was square in shape, 20.4± feet on each side, and contained 0.010± acre.
The State also erected a guardrail in front of the frontage of Deed No. 2 above, also shown on Exhibit 6 as Parcel A. Said guardrail started, at the south end of said frontage and continued in an unbroken line for 145± feet. The State then left a 75± feet access opening and then erected another guardrail 30± feet in length to the north boundary line of Parcel A.
Claimant operated a restaurant on Parcel A with auxiliary parking in Parcel B. The restaurant building is 147 feet in length along the highway. It contained an outdoor refreshment area along 75 feet of the front section of the building, a cafeteria counter section and two dining rooms with a seating capacity of 248. The restaurant is operated on a year-around basis but the bulk of the business is conducted during the July and August period. The customer totals vary from a few hundred a day during the Winter months to 8,000 to 10,000 a day during Sundays in July and August.
The highest and best use of Parcels A and B both before and after the appropriation was as a restaurant with related parking *629 and employee housing. The highest and best use of Parcel C both before and after the appropriation was for commercial development.
The claimant contends that the loss of parking area in Parcel B and the erection of guardrails in front of Parcels B and A consequentially damaged the restaurant operation and property.
Before we can determine whether or not consequential damage was caused by the erection of guardrails, we must determine whether or not the State left this claimant suitable access. It is well settled that an abutting landowner has an inherent right of access to a State highway and that such landowner may not be deprived of this right of access without compensation unless other suitable means of access remained or is provided. (Egerer v. New York Cent. & Hudson Riv. R. R. Co., 130 N. Y. 108; Holmes v. State of New York, 279 App. Div. 489, 282 App. Div. 278; Matter of Delaware County v. Wakeman, 168 Misc. 644; Corbisello v. State of New York, 17 Misc 2d 290.) However, an abutting owner is not entitled to compensation if the regulation which impairs his access is reasonably adapted to benefit the traveling public and the impairment of access amounts to mere inconvenience rather than such an interference with egress and ingress as to amount to a virtual taking of claimant’s property. (Northern Lights Shopping Center v. State of New York, 20 A D 2d 415, affd. 15 N Y 2d 688; Cities Serv. Oil Co. v. City of New York, 5 N Y 2d 110; Jones Beach Blvd. Estate v. Moses, 268 N. Y. 362.) Whether or not suitable access has been left or provided is a question of fact which is related to the highest and best use of the property affected. (Holmes v. State of New York, supra; Merritt Manor Estates v. Village of Elmsford, 30 Misc 2d 935.) Mere inconvenience does not stamp a means of access as unsuitable. As was stated in Northern Lights Shopping Center v. State of New York (supra, pp. 419-421) : “ That damages resulting from circuity of access and diversion of traffic are not compensable has been definitely determined by the Court of Appeals and by this court in several recent decisions (Selig v. State of New York, 10 N Y 2d 34, * * *; Nettleton Co. v. State of New York, 11 A D 2d 899 * * *; National Biscuit Co. v. State of New York, 12 A D 2d 998, mod. 14 A D 2d 729, affd. 11 N Y 2d 743, cert. den. 370 U. S. 924 * * *). * * * As for circuity of access, an abutting owner has no legal right to travel from his property to his destination in the most direct way possible. As for diversion of traffic, an abutting owner has no right to the continuation of a flow of traffic in front of his property. * * * Right of access means *630 reasonable ingress to and egress from abutting land to a system of public highways subject to reasonable traffic regulations unaffected by any diversion of traffic on the road or any circuity of travel encountered, once on the highway. * * * This right is subject to the fullest reasonable exercise of the public’s primary right of travel and, accordingly, damages resulting from reasonable traffic regulations are noncompensable ”.
The State took the position on the trial that the property owned by Reuben and Ethel Freed and that owned by the Red Apple Rest, Inc. (Deeds 1 through 4 inclusive, above) should be considered as a single economic unit; that taken together they satisfy the unities of title, use, and contiguity set out as the test for the operation of the unit property rule in Guptill Holding Corp. v. State of New York (20 A D 2d 832) and Kessler v. Slate of New York (21 A D 2d 568). That considered as one unit there was suitable access remaining to claimant’s property. The claimant, however, in interpreting the rule of law established by the same two cases contends that there is not such unity of ownership as would permit the court to consider these parcels as one economic unit, and, that considering Parcels A and B only there was not suitable access after the guardrails were erected. It is claimant’s position that the Guptill case as further interpreted by the Kessler case applies only to the situation where an individual owner of land is also the sole stockholder of the corporate owner of a contiguous tract. While it is true that the court in the Guptill and Kessler cases alluded to the possibility of a solely owned corporation it did not, in our opinion, restrict the application of Guptill to that one situation. As was stated in Guptill (p. 833), the general rule is that “ to warrant severance damages, unity of title or ownership must be shown, in addition to contiguity and common use”. However, the court went on to state the following: “ The record before us affords no basis for considering whether the rule might have to be relaxed, or whether close and long-term control could be equated to unity of ownership, where, as here, a well-advanced, functionally unified development can be shown; * # * and mutual interest and advantage would clearly have demanded — had the proprietors determined to sell — that the tracts be treated as a unit for purposes of evaluation by, and sale to a willing buyer; and where, in addition, there shall exist the factor of control * * * by contractual or other effective arrangement.” The above was further dealt with by the Appellate Division in the Kessler case wherein it stated (p. 570): “In unique circumstances such as those, where one individual may well have actual ownership over sev *631 eral parcels, it would be unrealistic to treat the parcels as separately owned.” (Italics added.) It is our opinion that this court must, under the Guptill and Kessler cases, look at the realistic ownership and control of contiguous parcels. If we find “ actual ownership ”, we must consider contiguous parcels as a single tract.
In the subject case there can be no question about the unity of use of the property east of Route 17. Claimant’s photographic Exhibits 12, 13, 18, 19, and 22 and schematic Exhibit 6 graphically portray said unity of use. The court on its view of this property can attest to this unity of use. In fact, if we had not known of the different ownerships involved, our logical assumption would have been one ownership and one operation. It perhaps should be noted here that in Deed No. 1 above Reuben and Ethel Freed obtained an agreement from the grantor that she would not sell food or beverages on her remaining land located west of Route 17 and opposite the Red Apple Rest. As the Freeds allegedly bought the property conveyed by Deed No. 1 as a gas station the court finds it difficult to understand the need for such a restrictive covenant, except as it protected the restaurant business of the Red Apple Rest, Inc. This restrictive covenant is another indication of the intent of the Freeds to consider the gas station area, parking area, and restaurant area as one economic unit under one unified control.
Mr. Freed owned 146 shares and controlled 50 shares of the Red Apple Rest, Inc., as trustee. It is our opinion that a stockholder, who owns and controls 196 shares out of a total of 200 shares of a corporation and is also president of said corporation, does in all actuality own and control said corporation.
There is another indication of the intent of the claimant and the Freeds as to unity of ownership and control in the briefs, Exhibit 9, submitted in Red Apple Rest v. McMorran (supra). On page 6 of plaintiffs’ counsel’s notice of motion for leave to appeal to the Court of Appeals it was stated: 1 ‘ Appellants had constructed thereon a pavement which was a facility necessary for the beneficial use of other adjoining facilities erected on plaintiffs’ properties.” On page 15 of the Submission of Controversy plaintiffs’ counsel stated:
“ (39) Plaintiffs’ properties adjoining Route 17 in the Town of Tuxedo are used for the operation thereon of a restaurant, parking area, service area, rest area, gasoline station, and vehicle repair shop, and have been so used since 1931.
“ (40) Plaintiffs’ premises have a frontage of 800' long on the east side of Route 17 in the Town of Tuxedo and a frontage on the west side 750' long.”
*632 These specific items merely point up the intent and actuality of control and use which completely pervades the briefs and other documents included in said case. We further point out that it would be very doubtful that the large restaurant operation carried out on Parcel A (Exhibit 6) could be maintained on the area provided by Parcels A and B as outlined in said exhibit. It is our opinion that said restaurant has been developed to utilize all of the available land of claimant and the Freeds. If a willing buyer sought to buy Parcels A and B, he would not, in our opinion, pay claimant’s appraised value for said premises unless he also obtained the Freed property.
The fact that Reuben and Ethel Freed owned the adjoining lands as tenants by the entirety and that Ethel Freed had no interest in the corporation does not weigh strongly enough to destroy the unity of ownership, control, and use set forth above.
We have confined our discussion above to the land and improvements east of Route 17. However, it is our opinion that the unity of use, control and ownership equally applies to the land west of Route 17. The fact that Route 17 divides said property does not militate against considering these properties as a single entity. (Boldt v. State of New York, 34 Misc 2d 784.)
Considering the claimant’s property and the Reuben and Ethel Freed property as a single economic unit, we find that the State left more than suitable access to said property. It is also our opinion that the appropriation of claimant’s land in the parking area as outlined in Exhibit 6 in Parcel B and as outlined in Exhibit 6 for Parcel C was too minor in area to have caused a consequential damage to any of the remaining property.
If we had not considered claimant’s property as a single economic unit with the Freed property and had considered claimant’s property as standing alone we would have arrived at the same conclusion relative to consequential damages. It is our opinion that there was suitable access left to Parcels A and B standing alone. We realize that this access is not as good, from claimant’s point of view, as was the prior unrestricted access. However, we find that the inconvenience of access and impairment of access caused by the guardrails is damnum absque injuria.
The court accepts the claimant’s value of 50 cents per square foot as the fair and reasonable market value of the areas appropriated. The claimant has been directly damaged in the amount of $718 for the 1,436 square feet appropriated in Parcel B; $740.50 for the 1,481 square feet appropriated in Parcel C; and, $196.20 for the 436 square feet taken as a permanent easement on Parcel C. The court finds no consequential damage to the *633 remainder. The claimant is therefor entitled to an award of $1,654.70, together with appropriate interest.
The claimant is awarded the sum of $1,654.70 for all direct damages, with interest thereon from October 9, 1959 to April 9, 1960 and from October 6, 1961 to the date of entry of judgment herein.
The award to claimant herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgagees and lienors having any right or interest in any stream, lake, drainage and irrigation ditch or channel, street, road, highway, or public or private right of way or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of publicly owned or public service electric, telephone, telegraph, pipe, water, sewer, and railroad lines.
The above together with the parties’ findings of fact which have been marked constitutes the decision of this court.
Let judgment be entered accordingly.